**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| **TILLMAN INFRASTRUCTURE LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE CITY OF COLE CAMP, MISSOURI,** | ) |
| | ) |
| **Serve: Ami Dieckman, City Clerk** | ) |
| **401 West Main Street** | ) |
| **Cole Camp, MO 65325** | ) |
| | ) |
| **Defendant.** | ) |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Tillman Infrastructure LLC ("Tillman"), by and through its attorney, and for its Complaint against Defendant The City of Cole Camp, Missouri ("City") states and alleges as follows:

## NATURE OF THE MATTER

This action seeks relief from the City's improper and arbitrary denial of Tillman's request for a special use permit. Tillman sought the permit to allow construction of a telecommunications tower to improve wireless communication service in the Benton County, Missouri, area. Tillman complied with all of the City's application requirements – Tillman submitted an Impact Study concluding that the construction would have no adverse impact on adjacent property values, and participated in the City's Planning and Zoning and Council Meetings. At the hearing, City Council Members discussed issues that are improper under Missouri law including Tillman's business decisions, collocation options and environmental factors. Despite clear compliance, advice, and support, the City ultimately denied Tillman's Application and did no without providing any formal explanation in writing of its reasoning for the denial.

1

1. The City's denial violates the Federal Telecommunications Act of 1996 ("TCA"), as the City did not provide a substantive denial in writing and the denial is not based on substantial evidence in the record. The City's denial also violates Missouri state laws, including R.S.Mo. §§ 67.5094, et seq. (the "Missouri Siting Act"), when the City considered prohibited criteria. Tillman seeks declaratory, injunctive, and mandamus relief pursuant to 47 U.S.C. §332 and 28 U.S.C. §2201, requesting that the City be ordered to accept Plaintiff's Application or the Application be deemed accepted, and that Plaintiff be granted a special use permit.

## PARTIES

2. Tillman Infrastructure, LLC, is, and at all times relevant hereto, has been a Delaware limited liability company registered to do and doing business in the State of Missouri.

3. The City of Cole Camp, Missouri, is organized under the laws of the State of Missouri and has the capacity to sue and be sued. The City is a municipal corporation and a home rule charter city within Benton County with a Mayor-Board of Aldermen form of government. The City is empowered by the Code of Ordinances of the City of Cole Camp ("Code") Article IV § 405.010, §405.265, and R.S.Mo. Chapter 89 to issue special use permits.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1367 because these claims arise under the laws of the United States, specifically 47 U.S.C. §332(c)(7).

5. This case presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. §2201 because the City has violated Tillman's federal rights under the TCA.

6. This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) for Plaintiff's state law claims under R.S.Mo. § 67.5090, *et seq*.

7.      Venue is proper in this Court because the City is in this judicial district where the events and/or omissions giving rise to this action occurred, and the property affected is located within this judicial district.

8.      The TCA provides that "the Court shall hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7)(v).

## FACTS COMMON TO ALL COUNTS

9.      Tillman is in the wireless telecommunications industry and places, constructs, modifies, operates, and manages telecommunication infrastructure on behalf of its clients across the United States.

10.     One of Tillman's clients is First Net (AT&T) ["AT&T"], which holds one or more licenses granted by the Federal Communications Commission ("FCC"), to provide commercial radio services, or wireless telecommunication services, across the United States.

11.     In this case, AT&T engaged Tillman to locate, build, and operate a telecommunications tower for use by AT&T to provide wireless telecommunication services in Benton County, Missouri.

## PROPOSED TOWER

12.     AT&T provides wireless communications services in Missouri. To address coverage and capacity issues for its cellular network in the Benton County area, AT&T engaged Tillman to locate, construct, and operate a telecommunications tower in Cole Camp, Missouri.

13.     Tillman conducted an analysis of potential tower sites in the Cole Camp area, including property owned by Klark S. Bohling ("Property Owner") identified as:

    Parcell ID# 02-7.0-36-000-000-002.000
    Sec 36 Twn 43 Rng 21—W ½ NWNW NE ¼
    Deed Book 0526 Page 0344
    Acres: 4.97
    Situs Address: Hazlett Drive, Cole Camp, MO  65325

3

("Property"). Tillman and the Property Owner executed a lease to allow Tillman the right to lease certain portions of the Property for placement of a 250-foot monopole telecommunications tower ("Proposed Tower").

14.     The Property is zoned Agricultural, which permits the Proposed Tower with a special use permit.

15.     The addition of the Proposed Tower to the Property would have no effect on the aesthetics or character of the surrounding area. The Proposed Tower would be surrounded by a chain link fence.

## COLE CAMP'S ZONING CODE

16.     The Code of Ordinances § 405.265 ("Land Development Code") provides:

D.      *Non-Residential Districts.* In non-residential districts, all freestanding wireless communications antenna support structures more than ninety (90) feet in height, including the antenna(s) installed on the support structures, or located less than three hundred (300) feet from a lot zoned for residential use shall be considered a special use requiring review and approval….

E.      *Location And Height.* It is the express intent of the City to encourage the location of new wireless communications antennas on existing structures, including buildings, utility poles, and equipment, and wireless communication support structures designed for co-location. Sites for new installation of support structures are encouraged to be as visually unobtrusive as possible by locating near existing trees, utility poles or towers, or similar elements that serve to screen or divert attention from the new support structure, and locating outside of primary views along major roads. Sites for new installation of support structures are encouraged to be as compatible as possible with surrounding land uses by avoiding locations in or near residential areas and locating in rear service areas, or other low visibility areas of business parks and intensely commercialized areas whenever possible. All antennas and antenna support structures shall comply with these standards:

1.      *Setbacks.* All antenna support structures and the antennas installed on those support structures, including all elements or parts thereof, shall conform to the minimum yard setback standards of the district in which it is to be located.

2.      *Additional setback from certain facilities and structures.* In addition to complying with the district setback standards, towers used as antenna support structures shall be located on the property so as to provide a minimum distance equal to fifty percent (50%) of the height of the structure from any residential structure or any aboveground utility power lines other than applicant's service lines or a distance equal to that from the top of the

4

support structure to a break point certified by a professional engineer or as evidenced by the manufacturer's specifications.

3.    *Height.* Wireless antennas and associated structures should be installed at the lowest possible height to meet signal coverage needs. It is a goal of the City to minimize new construction of antenna support structures through collocation, however, factors such as compatibility with adjacent land uses and aesthetics should be given consideration in circumstances when it may be more appropriate to construct lower support structures without collocation capability.

4.    *Consideration of alternative locations.* For any proposed location that requires a special use permit, evidence shall be submitted to demonstrate that:

a.    All reasonable alternatives not requiring a special use permit have been exhausted, and that the requested location is the most appropriate site available to serve the need identified considering compatibility with adjacent land uses and visual obtrusiveness; and
b.    No land owned by any agency of the Federal or State government, or by any political subdivision of the State, is available for locating the structure or tower.

F.    *Design And Aesthetics.* Installations of all antennas, antenna support structures, and accessory equipment shall meet the following standards, which shall be reflected on the drawings submitted for all relevant approvals:

1.    *Support structures.* All antenna support structures less than one hundred seventy-five (175) feet in height shall be of monopole design, and if more than seventy (70) feet in height, shall be constructed to accommodate multiple users while still meeting the aesthetic guidelines of this Section. Lattice towers and guyed support structures may only be approved where there is clear and convincing evidence that the communication objectives cannot be reasonably obtained utilizing one (1) or more lower monopole towers.

2.    *Antennas.* All anticipated antennas and mounting hardware should be shown on drawings for initial approval. Mounting details for similar types of antennas should be visually consistent, and mounting locations for multiple antennas on a single support structure should be coordinated in design, and spaced and balanced to give a planned and uncluttered appearance. Installation of additional antennas beyond those reflected in initial approvals may be administratively approved if they meet these design guidelines.

3.    *Equipment cabinets and other ground-level equipment.* When located in any District, equipment cabinets and other ground-level equipment shall be located within an enclosed building which shall be architecturally compatible with surrounding properties. Otherwise, ground-level equipment shall be enclosed with an architecturally compatible fence with a landscape buffer. This requirement may be waived when the design of the facility does not warrant a fence, e.g., a flag pole design or a similar stealth design.

4.    *Building and roof mounted antennas screening.* All communication antennas located in non-residential districts must be architecturally compatible and integrated with the building or structure on which they are located. For purposes of this Section *"architecturally compatible"* is a design intended to convey a clean appearance and help

minimize the visual impacts of the antennas and their support structures. Associated rooftop equipment shall also be screened from public view with architectural treatment compatible with the building architecture. Painting of the equipment alone shall not satisfy this requirement. If not adequately screened by a roof parapet, rooftop screening of associated equipment shall be provided with the use of architectural panels, walls or building features of similar appearance and materials.

5.  *Illumination.* Antennae support structures shall not be artificially lighted, unless required by the FAA or other applicable authority. If lighting is required, the lighting alternatives and design chosen shall cause the least disturbance to the surrounding properties.

17.    Code of Ordinances § 405.265.4, *Consideration of alternative locations,* has been superseded by R.S. Mo. § 67.5094 (2), which provides that an authority shall not "[e]valuate an application based on the availability of other potential locations for the placements of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure…."   Nevertheless, Tillman conducted an initial and thorough analysis of available collocation opportunities on existing wireless towers within the same search ring defined by the applicant before contacting any landowners in the search area.

**PERMIT APPLICATION**

18.    On February 4, 2021, Tillman submitted a Special Use Permit Application to the City for a Special Use Permit ("Permit") to build the Proposed Tower on the Property ("Application"). A copy of the Application is attached hereto as **Exhibit 1.**  The entirety of Tillman's Application and supporting documents are included in the record of the City's hearing and determination regarding the Application. As a part of the relief sought in this pleading, Tillman seeks an Order requiring the City to certify to this Court a true, full and complete copy of the records of the acts and procedures involved in the denial of Plaintiff's Application so that this Court may review the records and adjudicate upon the legality of the proceedings under the TCA.

19.    The Property Owner signed the cover letter accompanying Plaintiff's Application,

and requesting a special use permit on the Property, attached hereto as **Exhibit 2.**

20.     Tillman submitted a Value Impact Study, dated April 9, 2021, in advance of the City Council Meeting which is attached hereto as **Exhibit 3.**  The Value Impact Study concluded that "[T]he proposed cell tower development will not measurably impact the value of surrounding homes."  Exhibit 3, page 1.

21.     Tillman also submitted a letter, dated April 15, 2021, confirming its agreement to obtain a $50,000.00 bond to cover any damage that would potentially be caused during the construction of the Proposed Tower, attached hereto as **Exhibit 4.**

22.     On March 9, 2021, the City Planning and Zoning Commission held a public meeting regarding the Application. The City Planning and Zoning Commission's action on the Permit resulted in a tie.

<u>**CITY COUNCIL CONDUCT**</u>

23.     On April 15, 2021, at the City's regular City Council meeting, the City opened and closed a public hearing on the Application (also known as Ordinance 525).

24.     At the public hearing, City Council Members raised several considerations regarding the Application expressly forbidden by Missouri law. For example, City Council Members Meuschke and Lock raised the issues of whether the City could hire a third party to prepare a report on the project regarding how the Property was selected, and why another location was not selected.  Meuschke raised the issue of the availability of collocation.  City Council Member Ives expressed opposition to the chosen location, and stated that there were "other spots" that "would be better."  Ives then stated: "[A]ll that power that's coming from that tower does affect things, it does affect humans, it does affect animals, and we all know that, or should know that, but -- it will cause a milk cow to quit producing milk, just like a power line."  Mayor Bormann allowed members of the public to make statements regarding their opposition to the proposed

location and concerns for public health.

## **PERMIT DENIAL**

25.     After reading Ordinance 525, an ordinance granting a special use permit to Tillman Infrastructure, LLC, for telecommunication tower for property located on Hazlett Drive in the City of Cole Camp, Missouri, there was a motion and second to read the ordinance a second time.

26.     The motion to read Ordinance 525 a second time, as required by Code §110.070, Procedure to Enact, failed, thus resulting in the denial of the Application.  No further explanation of the denial was provided by the City.

## **COUNT I — VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(iii)**
## **(FAILURE TO PROVIDE DENIAL "IN WRITING" UNDER TCA)**

27.  Plaintiff restates and incorporates by reference paragraphs 1 through 26 above as if fully set forth herein.

28.     The TCA comprehensively addresses telecommunications policy and the development of facilities to provide telecommunications services throughout the United States. The TCA restricts the authority of local governments to prevent the development of telecommunications towers needed to provide adequate wireless communications services.

29.      The stated purpose of the TCA is "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." (Preamble to the TCA).

30.     The TCA also provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii).

31.     Under the TCA, a written denial must describe the reasons for the denial and include

8

a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons. *See T-Mobile S., LLC v. City of Roswell, Ga.,* 135 S. Ct. 808, 815 (2015); *Sprint Spectrum, L.P. v. Platte Cty., Mo.*, 578 F.3d 727, 732 (8th Cir. 2009).

32.     The City provided no written denial to Tillman's Application, and provided no substantive explanation of the denial or the reasons for the denial.

33.     The City's failure to provide an explanation of the reasons for its denial leaves the reviewing court without the ability to evaluate the denial, violating the 47 U.S.C. § 332(c)(7)(B)(iii) "in writing" requirement.

34.     The TCA provides, in pertinent part, that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action, or failure to act, commence an action in any court of competent jurisdiction. The court shall herein decide such action on an expedited basis….

47 U.S.C. §332(c)(7)(B)(v).

35.     Tillman is a "person[s] adversely affected" as that term is used in 47 U.S.C. §332(c)(7)(B)(v); 47 U.S.C. §153(39).

36.     Wireless telecommunications service is a "personal wireless service" for purposes of the TCA.  47 U.S.C. §332(c)(7)(C)(i).

37.     The TCA has been interpreted to vest courts of competent jurisdiction with authority to grant mandamus relief if such relief would be warranted under the circumstances.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

i.    Issue an Order declaring that the City's denial of Plaintiff's Application violates the "in writing" requirement of 47 U.S.C. § 332(c)(7)(B)(iii), and Plaintiff's Application is therefore deemed approved;

ii.   Issue an expedited mandatory injunction or writ of mandamus compelling the City

to issue the Permit, and any other permits necessary for Plaintiff to begin construction of the Proposed Tower, in accordance with Plaintiff's Application;

iii. Issue an Order requiring the City to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of Plaintiff's Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

iv. Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

v. Issue an award of Tillman's costs, including reasonable attorney's fees as may be allowable under law; and

vi. Provide for such other and further relief as the Court deems just and proper.

## COUNT II — VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(iii)
### (LACK OF SUBSTANTIAL EVIDENCE UNDER TCA)

38. Plaintiff restates and incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

39. The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii).

40. Based on the record before the City, the City's denial of Plaintiff's Application is not supported by substantial evidence and as such is a violation of the TCA.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

i. Declare that the City's denial of Plaintiff's Application is not supported by substantial evidence in the written record in violation of the TCA;

ii. Issue an Order prohibiting the City from denying the Application;

iii. Issue an Order requiring the City to complete the ministerial act of approving the Application;

iv. Issue a writ of mandamus directing the City to discharge its duties properly and to approve the Application;

v. Issue an Order requiring the City to certify to this Court a true, full and complete

copy of the record of the acts and procedures involved in the denial of Plaintiff's Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

vi. Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

vii. Issue an award of Tillman's costs, including reasonable attorney's fees as may be allowable under law; and

viii. Provide for such other and further relief as the Court deems just and proper.

## <u>COUNT III — VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(iv)</u>
## (IMPROPER CONSIDERATION OF HEALTH EFFECTS UNDER TCA)

42. Tillman restates and incorporates by reference paragraphs 1 through 41 above as if fully set forth herein.

43. The City's denial of the Application violates the TCA because it was based on the environmental effects of radio frequency emissions. 47 U.S.C. § 332(c)(7)(B)(iv).

44. As a result of the City's decision to deny Tillman's Application, Tillman has suffered and will continue to suffer irreparable harm.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

i. Declare that the City's denial of Plaintiff's Application is not supported by substantial evidence in the written record in violation of the TCA;

ii. Issue an Order prohibiting the City from denying the Application;

iii. Issue an Order requiring the City to complete the ministerial act of approving the Application;

iv. Issue a writ of mandamus directing the City to discharge its duties properly and to approve the Application;

v. Issue an Order requiring the City to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of Plaintiff's Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

vi. Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

vii. Issue an award of Tillman's costs, including reasonable attorney's fees as may

be allowable under law; and

viii.   Provide for such other and further relief as the Court deems just and proper.

**COUNT IV — VIOLATION OF MO. REV. STAT. § 67.5090, ET SEQ**
**(PROHIBITED CONSIDERATIONS UNDER MISSOURI SITING ACT)**

45.     Plaintiff restates and incorporates by reference paragraphs 1 through 44 above as if fully set forth herein.

46.     The Missouri Siting Act places restrictions on local jurisdictions in considering applications for wireless facilities, and in particular, Section 67.5094 of the Act, entitled *Prohibited Acts by Authority*, prohibits a municipality from considering certain criteria in evaluating an application related to wireless support structures.

47.   Section 67.5094 of the Act provides:

In order to ensure uniformity across the state of Missouri with respect to the consideration of every application, an authority shall not:

(1)     Require an applicant to submit information about, or evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;

(2)     Evaluate an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa . . .

(5)     With respect to radio frequency emissions, impose environmental testing, sampling, or monitoring requirements or other compliance measures on wireless facilities that are categorically excluded under the Federal Communication Commission's rules for radio frequency emissions under 47 CFR 1.1307(b)(1) or other applicable federal law, as the same may be amended or supplemented…

(7)     Establish or enforce regulations or procedures for environmental safety for any wireless communications facility that is inconsistent with or in excess of those required by OET Bulletin 65, entitled Evaluating Compliance with FCC Guidelines for Human Exposure to Radio Frequency Electromagnetic Fields, Edition 97-01,

12

released August, 1997, and Supplement A: Additional Information for Radio and Television Broadcast Stations;

(8)　　In conformance with 47 U.S.C. Section 332(c)(7)(b)(4), reject an application, in whole or in part, based on perceived or alleged environmental effects of radio frequency emissions;

(9)　　Impose any restrictions with respect to objects in navigable airspace that are greater than or in conflict with the restrictions imposed by the Federal Aviation Administration;

(10)　　Prohibit the placement of emergency power systems that comply with federal and state environmental requirements...

(16)　　Impose any requirements or obligations regarding the presentation or appearance of facilities, including, but not limited to, those relating to the kind or type of materials used and those relating to arranging, screening, or landscaping of facilities if such regulations or obligations are unreasonable. . . . [or]

(19)　　Condition or require the approval of an application based on the applicant's agreement to permit any wireless facilities provided or operated, in whole or in part, by an authority or by any entity in which an authority has a competitive, economic, financial, governance, or other interest, to be placed at or collocated with the applicant's wireless support structure.

*Id*. at 67.5094(1), (2), (5), (7), (8), (9), (10), (16), and (19).

48.　　At City Council meetings, the City Council evaluated Plaintiff's business decisions with respect to the choice of location and environmental factors.

49.　　The City Council also evaluated Plaintiff's Application based on the availability of other potential locations and the possibility of collocation.

50. Code § 405.265.E., in listing considerations for special use permits, references aesthetic conditions such as location and placement near trees and what characteristics must be considered for permit approval, specifically, that structures "be as visually unobtrusive as possible by locating near existing poles or towers, or similar elements that serve to screen or divert attention from the structure…."

13

51.  The City Council also inquired into whether the Proposed Tower could be collocated.

52.  Because the City evaluated criteria that were prohibited by the Missouri Siting Act and improperly applied regulations regarding appearances and collocation of competitive telecommunications providers, the Board's denial violated the Missouri Siting Act, Section 67.5094(1), (2), (5), (7), (8), (9), (16), and (19) et seq.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

i.  Declare that the City considered improper criteria in denying Plaintiff's Application, violating R.S.Mo § 67.5094;

ii.  Issue an Order prohibiting the City from denying the Application;

iii.  Issue an Order requiring the City to complete the ministerial act of approving the Application;

iv.  Issue a writ of mandamus directing the City to discharge its duties properly and to approve the Application;

v.  Issue an Order requiring the City to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in     the denial of Plaintiff's Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

vi.  Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

vii.  Issue an award of Tillman's costs, including reasonable attorney's fees as may be allowable under law; and

viii.  Provide for such other and further relief as the Court deems just and proper.

## COUNT V — DECLARATORY RELIEF
## (FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-2202)

53.  Plaintiff restates and incorporates by reference paragraphs 1 through 52 above as if fully set forth herein.

54.  The City failed to provide any substantive written explanation of the denial of the Application, violating the TCA.

55.     Based on the record before the City, the City's denial of Plaintiff's Application is not supported by substantial evidence, additionally violating the TCA.

56.     The City improperly inquired into Plaintiff's business decisions, and possible collocation and considered environmental factors, in further violation of the Missouri Siting Act.

57.     A real, immediate, actual, justifiable, and substantial continuing controversy exists between Plaintiff and the City as to whether the City's denial of Plaintiff's Application violates the TCA.

58.     A real, immediate, actual, justifiable, and substantial continuing controversy exists between Plaintiff and the City as to whether the City's denial of Plaintiff's Application violates Plaintiff's rights under Missouri law.

59.      There is a bona fide, actual, present, and practical need for a declaration of Plaintiff's right to the Permit for the Proposed Tower on the Property.

60.     Plaintiff's interest in the declaration of its rights is actual and adverse to those of the City.

61.     All conditions precedent to the relief demanded herein have been performed.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

    i.    Issue an Order declaring that the City failed to provide a substantive written denial
of Plaintiff's Application, in violation of the TCA;

    ii.    Issue an Order declaring that the City failed to act on Plaintiff's Application within   120 days, in violation of the Missouri Siting Act, and Plaintiff's Application is deemed approved;

    iii.    Issue an Order declaring that the City's denial of Plaintiff's Application is not supported by substantial evidence in the written record, in violation of the TCA;

    iv.    Issue an Order declaring that the City considered improper criteria in denying Plaintiff's Application, violating the Missouri Siting Act;

    v.    Issue an Order declaring Plaintiff's right to the Permit as requested in Plaintiff's Application;

vi.    Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

vii.   Issue an award of Tillman's costs, including reasonable attorney's fees as may be allowable under law; and

viii.  Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN E. TAYLOR, LC.

*/s/ John E. Taylor*
John E. Taylor, MO# 38598
Office: Corporate Woods, Building 55
9300 West 110th Street, Suite 620
Overland Park, Kansas 66210
Mail: P.O. Box 25345
Overland Park, Kansas 66225
Telephone: (913) 387-3188
Telecopier:(913) 387-3198
E-mail: johntaylor@johntaylorlc.com
Website: johntaylorlc.com
ATTORNEY FOR PLAINTIFF TILLMAN
INSTRASTRUCTURE LLC

16

VERIFICATION

STATE OF _New Jersey_ )
COUNTY OF _Somerset_ )   ss
                          —

    I, William Pollack, being duly sworn on my oath, state that I am the managing director and the authorized representative for plaintiff Tillman Infrastructure, LLC in the above matter, and that the facts therein are true according to my best knowledge and belief.

_____
William Pollack, Managing Director
Tillman Infrastructure, LLC

Subscribed and sworn to before me this __11th__ day of __May__ , 2021

_____
Notary Public

My Commission Expires: _8/17/2025_

```
WILMA S MENDE
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES   AUG 17 2025
```